UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| CAROL J. THORN,<br><br>      **Plaintiff,**<br><br>v.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of Social Security,**<br><br>      **Defendant.** | Case No. 15-2077 |

REPORT AND RECOMMENDATION

      Plaintiff Carol J. Thorn seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of her application for Disability Insurance benefits and Supplemental Security Income benefits. The parties have filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#23)** be **DENIED**, Defendant's Motion for Summary Judgment **(#26)** be **GRANTED**, and that the decision to deny benefits be affirmed.

I.      Background

      In March 2009, Plaintiff applied for Disability Insurance benefits and Supplemental Security Income benefits, alleging disability beginning January 1, 2009. Plaintiff's claim was denied initially and upon reconsideration. After a first hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (R. 19-32.) The Appeals Council denied review and Plaintiff appealed to the district court. On July 1, 2013, this Court remanded Plaintiff's claim to the Commissioner.

      The ALJ held a second hearing, where the ALJ heard testimony from Plaintiff and a Vocational Expert. The ALJ issued a second decision denying benefits on January 16, 2015. (R. 1398-1413.) The ALJ found that Plaintiff has the severe impairments of obesity, cardiomyopathy, chronic obstructive pulmonary disease/emphysema,

diabetes, and osteoarthrosis of the right knee. (R. 1401.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926). (R. 1404.) Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is unable to climb ladders, ropes, or scaffolds; she must avoid unprotected heights; and, she must avoid concentrated exposure to fumes, odors, dust, and gases.

(R. 1407.) The ALJ found that Plaintiff is unable to perform her past relevant work as a home attendant, teller, feeder, stacker, and sandwich maker, but that jobs exist in significant numbers in the national economy which Plaintiff can perform. (R. 1411-12.) The Appeals Council did not assume jurisdiction, making the ALJ's decision the final decision of the Commissioner pursuant to 20 C.F.R. § 404.984.

## II.     Standard of Review

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, in order for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. Analysis

#### a. RFC Determination

Plaintiff first argues that the ALJ's RFC finding lacked a supported record basis. "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96–8p). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Id.* (citing 20 C.F.R. §404.1545(a)(2), (b), (c)). Plaintiff makes several sub-arguments which the Court will consider in turn.

##### 1. Physician Opinion Evidence

First, Plaintiff argues that the ALJ did not adopt any physician opinion evidence in determining Plaintiff's RFC. Specifically, Plaintiff criticizes the ALJ's analysis of the opinions of Dr. Gage, Plaintiff's treating family physician, as well as the non-examining agency reviewers. Plaintiff does not challenge the weight given to the opinions of these doctors, instead Plaintiff argues that the ALJ was required "to obtain evidence to fill this void" rather than "fill the evidentiary gap based on his own interpretation of the medical record." (Plaintiff's Memorandum, #24, p. 10.)

The ALJ reviewed Dr. Gage's Medical Source Statement of Ability to Do Work-Related Activities, dated September 15, 2014, after the date of the ALJ's first decision. (R. 1839-42.) Dr. Gage's assessment included extensive limitations, including that Plaintiff is unable to even occasionally lift or carry 10 pounds, unable to stand or walk for 2 hours in an 8-hour workday, and unable to sit for 6 hours in an 8-hour workday. Dr. Gage cited to Plaintiff's chronic congestive heart failure as the source of her limitations. Dr. Gage also marked limitations in the areas of reaching in all directions, handling, fingering, feeling, seeing, hearing, and speaking. Finally, Dr. Gage found that all of the listed environmental limitations were caused by Plaintiff's impairments including temperature extremes, noise, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals, and gases.

The ALJ found support for Dr. Gage's conclusions regarding Plaintiff's respiratory-pulmonary disorder and accounted for these limitations by limiting Plaintiff to work in certain environments. (R. 1410). But, the ALJ found that Dr. Gage's assessments as to Plaintiff's other functional abilities were unreliable. Plaintiff reported that she was present when Dr. Gage completed the form, and that he did so at her request to assist her in obtaining Social Security disability benefits. (R. 1436-37.) As the Seventh Circuit has noted, "[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985). Plaintiff also reported that Dr. Gage did not perform any functional tests to determine her ability, nor did he ask Plaintiff about her ability to perform work related tasks. (R. 1436.) Dr. Gage's assessment goes beyond even the limitations alleged by Plaintiff and is not confirmed by any other evidence from the medical record. The ALJ noted that Plaintiff's own attending cardiologists from Sarah Bush Lincoln Health Center did not report similar limitations (R. 1804-05, 1815-1817.)

As noted above, Plaintiff does not challenge the weight given to Dr. Gage's assessment, but instead argues that the ALJ had a duty to seek additional medical evidence to fill the gap when the ALJ did not give controlling weight to Dr. Gage's opinion. The ALJ acknowledged that Plaintiff has not undergone other functional evaluation testing as to her ability to walk, stand, and lift specific weights. (R. 1410.) This alone, however, does not establish that there was a medical "void" which the ALJ needed to fill. The ALJ thoroughly reviewed and summarized numerous appointments and treatment records from multiple years in Plaintiff's record. Outside of Dr. Gage's opinion, which the ALJ reasonably discounted, nothing in the record supports limitations to the level alleged by Plaintiff. The Court finds that there was ample evidence on which the ALJ reasonably relied in reaching his RFC determination.

    **2. Exposure to Fumes**

Plaintiff also criticizes the ALJ's decision to only limit Plaintiff from "concentrated" exposures to fumes, odors, dust, and gases. As noted, the ALJ found

4

support for Dr. Gage's conclusions regarding Plaintiff's respiratory-pulmonary disorder. Plaintiff argues that the limitations placed by the ALJ are insufficient and that the ALJ failed to explain the basis for his finding that Plaintiff needed to avoid only concentrated exposure to these environmental irritants. On two occasions in his Decision, the ALJ explained the selected limitations. First, the ALJ noted that while Plaintiff had respiratory limitations, Plaintiff did not have "the respiratory dysfunction that requires nebulizer or in-home oxygen treatment." (R. 1407.) The ALJ also stated that Plaintiff's respiratory impairments restrict her from working in certain environments containing irritants. Plaintiff's disagreement with the ALJ's reasoning is insufficient to justify reversal, and the Court finds that these explanations adequately explained the basis for the ALJ's finding.

### 3. Fatigue

Finally, Plaintiff argues that the ALJ failed to set forth an assessment of Plaintiff's fatigue and tiredness. Plaintiff recognizes that the ALJ credited Plaintiff's complaints of fatigue and the fact that Plaintiff's medications are known to cause fatigue. Plaintiff argues that this is inconsistent with the ALJ's finding that Plaintiff was capable of sedentary work. The ALJ noted Plaintiff's alleged sleep disturbance, but also found that Plaintiff did not mention any sleep issues to her family doctor, and that the medical record was negative for evidence of sleep disturbances. (R. 1408, 1661.) Again, even though Plaintiff disagrees with the ALJ's evaluation, the ALJ supported his decision regarding limitations due to sleep difficulties with substantial evidence.

### b. Credibility

This case was previously remanded for an explanation of the ALJ's credibility determination, and Plaintiff argues that the ALJ again failed to properly assess Plaintiff's credibility. (R. 1506.) The Court notes that the SSA has recently updated its ruling on evaluating symptoms in disability cases. The new SSR 16-3p eliminates the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p. This Court agrees with the Northern District of Illinois' conclusion that because the SSA specifies that the new

5

ruling is intended to "clarify" the existing rules, and because the prior ruling and the new ruling are substantially consistent, the Court should evaluate Plaintiff's credibility argument under the language of the new SSR 16-3p. *See Herrold v. Colvin*, 2016 WL 1660495, p. 9 (N.D. Ill. 2016); *Damit v. Colvin*, 2106 WL 3568088, p. 8-9; *see also Farrar v. Colvin*, 2-16 WL 3538827, n. 3 (noting that "While the new policy statement does apply to matters on appeal, the Court is also bound by case law concerning the same regulatory process under the "credibility" analysis of the former SSR 96-7p").

> Under the new SSR 16-3p:
>
> [T]he ALJ must still consider all of an individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record. In assessing symptoms, the ALJ should consider elements such as "objective medical evidence of the impairments, the daily activities, allegations of pain and aggravating factors, functional limitations, and treatment (including medication)."

*Damit v.* Colvin, 2016 WL 3568088 (N.D. Ill. 2016) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006); SSR 16-3, 2016 WL 1119029.)

"An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F. 3d 500, 504-05 (7th Cir. 2004.) The Court will affirm the ALJ's credibility finding so long as the ALJ "gives specific reasons that are supported by the record." *Id*. at 505.

First, Plaintiff argues that the ALJ made an unqualified independent medical assessment when finding that Plaintiff's statements that she followed the diabetic diet recommended by her doctors were not credible. At the second hearing, the ALJ asked Plaintiff if she "watch[ed] her diet," to which Plaintiff responded "Somewhat, yes." (R. 1450-51.) The ALJ's Decision noted that Plaintiff's self-reports of following the diet were inconsistent with the fact that she continued to gain weight during this time period, and therefore cast doubt on her credibility. (R. 1406, 1408.)

As discussed, under the new SSR 16-3p, the SSA emphasized that "subjective symptom evaluation is not an examination of the individual's character" but instead the ALJ should focus on objective medical evidence, daily activities, allegations of pain and aggravating factors, functional limitations, and treatment in evaluating the claimant's subjective symptoms. Here, the ALJ was evaluating Plaintiff's truthfulness, a term eliminated by the new SSR 16-3p, when he found that Plaintiff lacked credibility when she lied about following the recommended diet. Therefore, the Court finds that this was an improper consideration in evaluating the merit of Plaintiff's other subjective symptoms, but this alone does not mandate a remand.

The ALJ also considered a number of other factors in considering the merit of Plaintiff's subjective symptoms. The ALJ considered that Plaintiff described daily activities that were not limited to the extent alleged by her subjective complaints. (R. 1408.) The ALJ noted that Plaintiff reported being capable of making light meals, using a computer, and shopping, among other things. The ALJ also noted that despite Plaintiff's claimed limitations on sitting, she sat through two hearings of at least 45 minutes without any apparent distress and sat in a car for the one hour drive each way. The ALJ also cited objective medical evidence showing that cardiac testing showed normal results when Plaintiff was taking the prescribed medication. As to Plaintiff's alleged knee pain, the ALJ noted that there was no evidence of record showing any muscle weakness, atrophy, muscle spasms, or other abnormalities. The ALJ also noted that no doctor, outside Dr. Gage, found that Plaintiff was limited to the extent claimed.

The ALJ also considered that Plaintiff failed to complete her physical therapy as directed. Plaintiff's physician directed her to attend 2-3 physical therapy sessions a week for eight weeks. (R. 1791.) The ALJ considered that Plaintiff did not complete these sessions, and Plaintiff argues that the ALJ failed to look further into why Plaintiff did not pursue physical therapy. The second hearing transcript reflects, however, that the ALJ directly asked Plaintiff how long she did therapy and then followed up by asking Plaintiff why she quit. Plaintiff testified that she did not go to physical therapy for long, and she quit early because she "didn't like it" because "it was painful."

(R.1435.) It was reasonable for the ALJ to consider the prescribed treatment for Plaintiff's knee pain as well as the fact that Plaintiff chose not to follow the treatment plan.

Plaintiff also criticizes the ALJ's consideration of the fact that Plaintiff's claimed need for a cane or walker was unsupported due to the lack of prescription in the medical record. Plaintiff does not cite any medical record showing a prescription was written for a cane or walker, and it was reasonable for the ALJ to give less weight to Plaintiff's alleged need to use an assistive device when no physician found it necessary.

As discussed, the ALJ supported his evaluation of Plaintiff's subjective symptoms with an analysis of the factors included in the new SSR 16-3p. As the ALJ's finding was supported by substantial evidence, Plaintiff has not shown that the credibility finding was patently wrong, and the Court does not find reversible error.

### c. Independent Medical Decisions

Plaintiff argues that the ALJ impermissibly rendered his own medical determinations on several issues including Plaintiff's dietary compliance and functional limitations. The Court considered both of these issues in the two proceeding sections and for the reasons discussed above, does not find reversible error.

### d. Listing 1.02

Next, Plaintiff argues that the ALJ failed to properly analyze whether Listing 1.02 was satisfied. To meet Listing 1.02A, Plaintiff must have a "gross anatomical deformity" involving a major peripheral weight-bearing joint that results in an "inability to ambulate effectively." 20 C.F.R. pt. 404, supt. p. app. 1, Listing 102. "Inability to ambulate" must have lasted or be expected to last for at least 12 months and is defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."*Id*.

Plaintiff claims that her knee pain satisfies Listing 1.02A. No medical record reflects impairments resulting from Plaintiff's knee condition amounting to those required by Listing 1.02. Plaintiff used a walker at the second hearing, but not the first.

No physician prescribed Plaintiff with an assistive device. The ALJ did not err in finding that Plaintiff did not meeting Listing 1.02.

### e. Neuropathy & Back Impairments

Finally, Plaintiff argues that the ALJ improperly dismissed Plaintiff's neuropathy and back impairments. The ALJ found that Plaintiff's neuropathy and back impairments were non-severe impairments. As to the neuropathy, Plaintiff argues that the ALJ incorrectly found that Plaintiff's treatment for neuropathy was short term and that Plaintiff had not required treatment for the neuropathy for more than 12 months. Plaintiff cites numerous medical records showing prescriptions for gabapentin, a drug used to treat neuropathy. Each of the medical records cited include a list of drugs which Plaintiff was currently taking. (R. 1663, 1678, 1684, 1691, 1714, 1800, 1809, 1820.) These medical records do not detail any symptoms or complaints associated with any neuropathy. For example, a December 2013 record lists gabapentin as a medication and merely reflects that back in December 2011, Plaintiff was diagnosed with "unspecific hereditary and idiopathic peripheral neuropathy." (R. 1693.) These records, cited by Plaintiff do not show an impairment that rises to the level of severe.

Plaintiff also claims that she had severe back pain that limited her ability to sit. (R. 1445.) Plaintiff's Memorandum cites one x-ray showing mild to moderate degenerative changes. (R. 1827.) No further evidence of limitations resulting from back pain is found. The ALJ reasonably found that Plaintiff's alleged back pain did not qualify as a severe impairment.

The Court notes that the ALJ considered both Plaintiff's neuropathy and back pain as non-severe impairments at steps three through five of the evaluation process. The Court does not find reversible error.

### f. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#23)** be **DENIED**, Defendant's Motion for Summary Judgment **(#26)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within

14 days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED THIS 3rd day of August, 2016.

s/ ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE